WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


JUNE FREEMAN,                           )
                                        )
                      Plaintiff,        )
                                        )
        vs.                             )
                                        )
KILOLO KIJAKAZI, acting Commissioner of )
Social Security,                        )
                                        )          No. 3:22-cv-0256-HRH
                      Defendant.        )
                                        )
_____)

O R D E R

        This is an action for judicial review of the denial of disability benefits under Title II

and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f.  Plaintiff June

Freeman has timely filed her opening brief[1] to which defendant, Kilolo Kijakazi, has timely

responded.[2]  Oral argument was not requested and is not deemed necessary.

Procedural Background

        On June 7, 2018, plaintiff filed applications for disability benefits under Title II and

Title XVI,[3] alleging that she became disabled on January 1, 2015.  Plaintiff alleges that she

is disabled due to breathing problems, intestinal swelling/blockage, chronic back pain,

_____

        [1]Docket No. 14.

        [2]Docket No. 15.

        [3]Plaintiff had previously filed applications for benefits in 2006 and 2010.  Admin.
Rec. at 89.

herniated/bulging discs, spinal stenosis, PTSD, high blood pressure, thyroid disorder, ADHD, anxiety, and migraines. Plaintiff's applications were denied initially, and she requested an administrative hearing. After a hearing on January 27, 2020, an administrative law judge (ALJ) denied plaintiff's applications on March 27, 2020. On September 21, 2020, the Appeals Council denied plaintiff's request for review. Plaintiff sought judicial review, and on June 15, 2021, the district court remanded the matter pursuant to a stipulation of the parties. On remand, a second administrative hearing was held on July19, 2022. On August 25, 2022, the ALJ again denied plaintiff's applications. On November 22, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

## General Background

Plaintiff was born on June 5, 1967. She was 47 years old on her alleged onset of disability date, 52 years old at the first administrative hearing, and 55 years old at the second administrative hearing. Plaintiff has a high school education and has taken some college courses. Plaintiff's past relevant work includes work as a nursing assistant/home health care worker and a waitress/server.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through June 30, 2016."[4]

---

[4]Admin. Rec. at 1286.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 1, 2015, the alleged onset date...."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease, obesity, and anxiety...."[7] The ALJ noted that plaintiff had been diagnosed with ADHD, depression, and PTSD and stated that she had considered plaintiff's

---

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 1286.

[7]Admin. Rec. at 1286.

mental impairments "in combination ... regardless of the diagnosis, individual label, or severity of any particular impairment."[8]  The ALJ found the following impairments to be non-severe: "chronic obstructive pulmonary disease (COPD), hepatitis C, chronic headaches, thyroid disorder, hypertension, small partial bowel obstruction/gastrointestinal pain, obstructive sleep apnea, chronic headaches, and right hip degenerative joint."[9]  The ALJ found plaintiff's "history of substance use ... a non-medically determinable impairment."[10]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[11]  The ALJ considered Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root); Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina); Listing 12.04 (depressive, bipolar and related disorders); Listing 12.06 (anxiety and obsessive-compulsive disorders); and Listing 12.15 (trauma- and stressor-related disorders).[12]  The ALJ "also considered the added impact of the claimant's obesity on her symptoms but d[id] not find that the added effect causes her

---

[8]Admin. Rec. at 1287.

[9]Admin. Rec. at 1287.

[10]Admin. Rec. at 1289.

[11]Admin. Rec. at 1289.

[12]Admin. Rec. at 1289.

impairments to meet or equal a listing."[13] The ALJ considered the "paragraph B" criteria and found that plaintiff had mild limitations as to understanding, remembering, or applying information; mild limitations as to interacting with others; moderate limitations as to concentrating, persisting or maintaining pace; and moderate limitations as to adapting or managing oneself.[14]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ladders, ropes or scaffolds and crawl. She can frequently climb ramps and stairs, balance, stoop, kneel, and crouch. She is able to perform simple and detailed tasks, that can be learned within three months, and can tolerate occasional changes in the work setting.[15]

The ALJ discounted plaintiff's pain and symptom statements because plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual[;]" because "medications have been relatively effective in controlling the

---

[13]Admin. Rec. at 1289.

[14]Admin. Rec. at 1289-1290.

[15]Admin. Rec. at 1290-1291.

claimant's symptoms[;]" and because of plaintiff's "many reportedly intact activities of daily living."[16]

The ALJ found Dr. Caldwell's opinion "partially persuasive...."[17] The ALJ found Dr. Anderson's opinion "partially persuasive...."[18] The ALJ found APRN Markovich's opinion

---

[16]Admin. Rec. at 1292.

[17]Admin. Rec. at 1296. On March 5, 2019, Dr. Caldwell opined that plaintiff could occasionally lift/carry 50 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to push/pull; had no limitations as to climbing, balancing, kneeling, crouching, or crawling; could occasionally stoop; should avoid moderate exposure to extreme cold, vibration, fumes, odors, dust, gases, and poor ventilation; and should avoid concentrated exposure to extreme heat, wetness, humidity, noise, and hazards. Admin. Rec. at 1215-1218.

[18]Admin. Rec. at 1297. Dr. Anderson, a medical expert at the first administrative hearing, testified that plaintiff

> could occasionally and frequently lift and carry 25 pounds, ... can stand or walk six hours out of an eight-hour workday, sit six hours out of an eight-hour workday, no limits with push, pull. [F]requent ramps and stairs, never ladders, ropes or scaffolds, frequent balancing, frequent stooping, frequent kneeling, crouching and crawling. [Avoid] particularly concentrated temperatures ... both cold and heat because of the complaints of joint pain and some back pain, same with concentrated [exposure to] wetness and humidity, avoid even moderate exposure to noise because of the headache history, [avoid] concentrated [exposure to] vibration[, avoid] moderate exposure to fumes and odors because of the history of lung problems, and [avoid] moderate exposure to hazards because of the chronic use of pain medication.

Admin. Rec. at 53-54.

-6-

"partially persuasive...."[19]  The ALJ found Dr. Green-Hill's opinion persuasive.[20]  Although

Dr. Kesselring did not offer an opinion as to plaintiff's functional ability, the ALJ found

"[h]is opinion regarding the claimant's diagnosis ... partially persuasive...."[21]  The ALJ found

Dr. Winn's 2006 opinion[22] "not persuasive nor inherently valuable, as it ... pertains to an

---

[19]Admin. Rec. at 1296.  This opinion is discussed below in detail.

[20]Admin. Rec. at 1298.  On December 5, 2021, Dr. Lisa Green-Hill opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to push/pull; could frequently climb ramps/stairs, balance, stoop, kneel, and crouch; and could occasionally climb ladders/ropes/scaffolds and crawl; and had no manipulative, visual, communicative, or environmental limitations.  Admin. Rec. at 1395-1397.

[21]Admin. Rec. at 1296.  Dr. Kesselring's diagnoses were major depressive disorder, moderate; and ADHD (by history).  Admin. Rec. at 1675.

[22]Dr. Winn opined that plaintiff

> may very likely be over-exaggerating any actual memory deficits she may be experiencing in order to present herself as being less capable of gainful activity than is actually the case with her – i.e. malingering.  Ms. Freeman's presentation in the office today was characterized by some minor psychomotor agitation and mild concentration difficulties, but these did not impede her ability to engage in testing or prohibit her from earning average scores on subtests drawing specifically on verbal and visual attention and concentration.  Though she very well may m[eet] the diagnostic criteria for Attention Deficit-Hyperactivity Disorder, with combined symptoms of inattentiveness and hyperactivity, her symptoms appear to be under good control on her current medication and would not be prohibitive to her engaging in simple, repetitive work activities.

Admin. Rec. at 322-323.

evaluation of claimant at a time far outside the relevant adjudicatory period[.]"[23]  The ALJ

found Dr. Gonzales' opinion "partially persuasive...."[24]  The ALJ also found Dr. Lace's

opinion "partially persuasive...."[25]  The ALJ found Dr. Rose's opinion partially persuasive.[26]

The ALJ found Dr. Rozenfeld's opinion persuasive.[27]

---

[23]Admin. Rec. at 1297.

[24]Admin. Rec. at 1295.  This opinion is discussed below in detail.

[25]Admin. Rec. at 1295.  This opinion is discussed below in detail.

[26]Admin. Rec. at 1297.  On February 25, 2019, Dr. Rose opined that plaintiff had mild limitations as to understanding, remembering, or applying information; moderate limitations as to her ability to interact with others; mild limitations as to concentration, persistence, or maintaining pace; and no limitations as to adapting or managing oneself.  Admin. Rec. at 83.

[27]Admin. Rec. at 1296.  On December 16, 2021, Dr. Ellen Rozenfeld opined that plaintiff had mild limitations as to understanding, remembering, or applying information; mild limitations as to interacting with others; moderate limitations as to concentration, persistence, or maintaining pace; and moderate limitations as to adapting or managing oneself.  Admin. Rec. at 1392.  Dr. Rozenfeld also opined that plaintiff was not significantly limited in her ability to carry out short/simple/detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in her ability to maintain attention and concentration for extended periods and respond appropriately to changes in the work setting.  Admin. Rec. at 1398-1400.  Dr. Rozenfeld further opined that plaintiff's "ability to carry out tasks with adequate persistence and pace would be moderately impaired for complex tasks but adequate for completion of simple and detailed tasks" and that plaintiff was "able to adapt to and cope with the demands of a routine work setting with few workplace changes."  Admin. Rec. at 1399-1400.

-8-

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as [a] waiter/waitress...."[28]

Although the ALJ was not required to make step five findings, the ALJ found that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform," including work as a production assembler, an electronics accessories assembler, and a routing clerk.[29]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision...."[30]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence

---

[28]Admin. Rec. at 1298.

[29]Admin. Rec. at 1298-1299.

[30]Admin. Rec. at 1300.

-9-

supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff first argues that the ALJ erred as to Dr. Gonzales' opinion. Dr. Gonzales opined that

> [b]ased on [plaintiff's] social functioning, and vocational and educational history, her ability to understand, remember, and apply information is considered mildly impaired. Based on current social functioning, her ability to socially interact is considered moderately impaired. Based on her self-report, her ability to concentrate, persist at tasks, and pace abilities is considered mildly impaired. Based on social functioning and self-report, her ability to adapt/manage [herself] is considered unimpaired.[31]

While the ALJ found some parts of Dr. Gonzales' opinion persuasive, the ALJ found Dr. Gonzales' "opinion that [plaintiff] is moderately impaired in interacting with others ...

---

[31]Admin. Rec. at 1197.

-10-

unpersuasive...."[32]  Plaintiff argues that the ALJ erred in rejecting Dr. Gonzales' social interaction opinion.

The ALJ must "'articulate ... how persuasive' [she] finds 'all of the medical opinions' from each doctor....'"  Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)).  "The most important factors an ALJ must 'consider when [evaluating] the persuasiveness of medical opinions ... are supportability ... and consistency.'"  Delgadillo v. Comm'r of Social Security Admin., --- F.Supp.3d ---, 2022 WL 17038552, at *3 (D. Ariz. 2022) (quoting 20 C.F.R. § 404.1520c(a)).  The ALJ must "'explain how [she] considered the supportability and consistency factors[.]'"  Woods, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)(2)).  "Other factors, which an ALJ 'may, but [is] not required to [] explain' when evaluating the persuasiveness of a medical opinion, are the medical source's 'relationship with the claimant,' 'specialization,' 'familiarity with the other evidence in the claim,' and 'understanding of [the] disability program's policies and evidentiary requirements.'"  Delgadillo, 2022 WL 17038552, at *3 (quoting 20 C.F.R. § 404.1520c(b)(2), (c)).  "[T]o determine the persuasiveness of a medical opinion the court must evaluate whether the ALJ properly considered the factors as set forth in the amended regulations."  Tanya L. L. v. Comm'r of Social Sec., 526 F.Supp.3d 858, 866 (D. Or. 2021).  "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or

_____

[32]Admin. Rec. at 1295.

-11-

inconsistent without providing an explanation supported by substantial evidence." <u>Woods</u>, 32 F.4th at 792.

As for the consistency factor, the ALJ found Dr. Gonzales' "opinion that the claimant is moderately impaired in interacting with others" to be "unpersuasive because the evidence shows that [plaintiff] was pleasant and cooperative during appointments and had no difficulty traveling and interacting with her four-year-old grandchild...."[33] Plaintiff argues that this evidence does not constitute substantial evidence to support the ALJ's rejection of Dr. Gonzales' social interaction opinion.

Plaintiff's ability to interact with medical providers was not inconsistent with Dr. Gonzales' social interaction opinion. As another court has explained,

> the fact that a claimant manages to be cooperative with her healthcare providers does not contradict those providers' opinions that the claimant is severely [or moderately] limited in her ability to interact with coworkers, supervisors, or the general public. Plaintiff's healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients. Furthermore, a medical treatment relationship is not like the relationship a worker has with her coworkers, supervisors, or the general public. The goals and nature of interacting with healthcare providers is different.... Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting.

---

[33] Admin. Rec. at 1295.

-12-

<u>Tina R. v. Comm's of Social Sec.</u>, Case No. C18-1041JLR, 2019 WL 1417301, at *5 (W.D. Wash. March 29, 2019) (quoting 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016)).

Plaintiff's ability to interact with her four-year-old grandchild was also not inconsistent with Dr. Gonzales' social interaction opinion. As plaintiff points out, this court has observed that a claimant's "interaction with her family members is likely to be quite different from her interaction with co-workers and supervisors." <u>Dockstader v. Comm'r of Social Sec. Admin.</u>, Case No. 3:18-cv-8163-HRH, 2019 WL 1274986, at *5 (D. Ariz. March 20, 2019). Moreover, the ALJ did not explain how plaintiff's interactions with her young grandchild indicated a greater ability to interact with coworkers, supervisors, and the general public than Dr. Gonzales opined.

The same is true of the ALJ's finding that plaintiff's ability to travel was inconsistent with Dr. Gonzales' social interaction opinion. As plaintiff argues, "[t]he ALJ did not develop or explain the social activities [p]laintiff may have engaged in while traveling, and the act of traveling somewhere does not inherently demand [extended] social interaction."[34] The ALJ must "'build an accurate and logical bridge from the evidence to her conclusions so that [the court] may afford the claimant meaningful review of the SSA's ultimate findings[,]'" but the ALJ failed to build such a bridge between plaintiff's ability to travel and her ability to interact with coworkers, supervisors, and the general public. <u>Micheal D. v.</u>

_____

[34]Plaintiff's Memorandum [etc.] at 8, Docket No. 14.

Comm'r of Social Sec., Case No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (quoting Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)).

As for the supportability factor, the ALJ found that Dr. Gonzales' social interaction opinion "appear[ed] to be at least partially supported by the claimant's reports of her symptoms."[35] The ALJ explained that this opinion "seem[ed] to be based on [plaintiff's] reports of irritability and her statements regarding her anxiety and depression levels" but that Dr. Gonzales "did not state that she appeared irritable or uncooperative during his examination."[36] But, as discussed above, plaintiff's ability to interact with Dr. Gonzales during his evaluation is not indicative of her ability to interact with coworkers and supervisors. Moreover, the Ninth Circuit has concluded that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). As the Ninth Circuit has noted, "mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms" and "[t]o allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders." Ferrando v. Comm'r of Social Sec. Admin., 449 Fed.Appx. 610, 612, n.2, (9th Cir. 2011).

---

[35]Admin. Rec. at 1295.

[36]Admin. Rec. at 1295.

-14-

Finally, plaintiff argues that the ALJ erred as to Dr. Gonzales' social interaction opinion because the ALJ discussed only findings that supported rejecting this opinion and none of the findings that supported accepting the opinion. "'The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.'" Edwin C. v. Kijakazi, Case No. 5:20-cv-2478-MAR, 2021 WL 7286046, at *7 (C.D. Cal. Nov. 19, 2021) (quoting Switzer v. Heckler, 742 F.2d 382, 385–86 (7th Cir. 1984)). But, plaintiff argues that is exactly what the ALJ did here. Plaintiff argues that the ALJ isolated plaintiff's cooperative behavior and other normal mental status findings but did not discuss the mental status findings and other evidence that supported moderate limitations in the ability to interact with coworkers, supervisors, and the general public. For example, plaintiff points out that on March 27, 2015, she had a guarded attitude, "other" insight/judgment, and tangential thought process;[37] that on February 3, 2015, her GAF was 40;[38] and that on October 7, 2015, her affect was anxious and depressed and her thought process tangential.[39] Plaintiff also points out that her treatment records with Counseling Solutions show "frequent mood abnormalities and occasions of altered mental status."[40]

---

[37]Admin. Rec. at 380.

[38]Admin. Rec. at 377.

[39]Admin. Rec. at 384.

[40]Plaintiff's Memorandum [etc.] at 10, Docket No. 14 (citing Admin. Rec. at 387 (anxious, depressed affect; and "other" insight/judgment, and thought process); 392 (anxious affect and "other" insight/judgment); 393 (sad mood); 395-396 (sad mood, anxious affect, (continued...)

-15-

Plaintiff further points out that Dr. Tieva prescribed Latuda for mood swings,[41] and Dr. Kesselring noted depressed mood and tearfulness.[42] Plaintiff insists that all of this evidence supports Dr. Gonzales' social interaction opinion, and that the ALJ's cursory discussion of her cooperative behavior basically ignored all of this evidence.

The ALJ did not cherry-pick evidence in her assessment of Dr. Gonzales' social interaction opinion, but the ALJ's reasons for finding Dr. Gonzales' social interaction opinion inconsistent and unsupported were not supported by substantial evidence. Thus, the ALJ erred in rejecting Dr. Gonzales' social interaction opinion.

This error was not harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)). If plaintiff were moderately limited in her ability to interact with others, it is likely that she would be unable to perform her past relevant work as a waiter/waitress, and, as the ALJ acknowledged, if plaintiff were unable to return to her past relevant work, "a finding of 'disabled' would be

_____

[40](...continued)
tangential thought process, "other" concentration and speech); 398 (anxious affect and "other" insight/judgment and attention); 1654 ("other" attention/concentration); 1657 (anxious mood); 1660 (anxious, discouraged, frustrated, overwhelmed and sad mood); 1662 (anxious, sad, stress, and worried mood and distracted attention); 1863 (obsessive, anxious, depressed, frustrated, stressed, and worried mood).

[41]Admin. Rec. at 1784, 1803.

[42]Admin. Rec. at 1674.

directed by Medical-Vocational Rule 202.06" as of June 4, 2022, which was the date on which plaintiff "became a person of advanced age under Social Security regulations[.]"[43]

Plaintiff next argues that the ALJ erred as to Dr. Lace's opinion. Dr. Lace testified that plaintiff had mild limitations as to understanding, remembering, or applying information; moderate limitations as to interacting with others; mild limitations as to concentration, persistence, and maintaining pace; and mild limitations as to managing oneself.[44] Dr. Lace testified that plaintiff would be "limited to occasional contact ... with coworkers, supervisors, and the general public."[45]

The ALJ found Dr. Lace's opinion that plaintiff was "moderately impaired in interacting with others" to be "unpersuasive because the evidence shows that [plaintiff] was pleasant and cooperative during appointments and none of her providers reported abnormal interactions...."[46] But, as discussed above, plaintiff's ability to interact with her medical providers is not indicative of her ability to interact with coworkers, supervisors, and the general public. Thus, the ALJ erred in rejecting Dr. Lace's social interaction opinion. And, as discussed above in connection with Dr. Gonzales' opinion, this error was not harmless because it would have likely precluded plaintiff from doing her past relevant work and she

---

[43]Admin. Rec. at 1300.

[44]Admin. Rec. at 50.

[45]Admin. Rec. at 50.

[46]Admin. Rec. at 1296.

-17-

would be considered disabled as of June 4, 2022, under the Medical-Vocational guidelines if she could not perform any of her past relevant work.

Plaintiff next argues that the ALJ erred in discounting APRN Markovich's opinion. Markovich opined that plaintiff

> has limitations in sitting and standing. [She] can perform this action frequently due to back pain and hip discomfort. The claimant has limitations in walking. [She] can perform this action frequently due to back pain and hip discomfort. The claimant has limitations in lifting and carrying. [She] can lift and carry about 10 pounds occasionally due to poor lung function as well as back pain.[47]

The ALJ found Markovich's opinion "partially persuasive as it is somewhat consistent with the evidence of the record" but also found that Markovich's opinion was "too limiting given the evidence of physical examinations showing only tenderness on palpation and positive straight leg raise tests, but good range of motion in all major joints...."[48] The ALJ also found Markovich's opinion to be inconsistent with plaintiff's reported daily activities and unsupported by Markovich's own examination findings, which included "tenderness to palpation of the spine, negative straight leg raise test, normal strength in all extremities, and normal range of motion in all joints...."[49]

---

[47]Admin. Rec. at 1685.

[48]Admin. Rec. at 1296.

[49]Admin. Rec. at 1296-1297.

Plaintiff argues that the ALJ's explanation that Markovich's opinion was not consistent with plaintiff's physical exam findings was not a sufficient reason for discounting Markovich's opinion "because the ALJ wholly failed to explain why the range of motion in [p]laintiff's joints should undermine Ms. Markovich's opinion[.]"[50] Plaintiff contends that Markovich's opinion was based on plaintiff's back pain, hip discomfort, and poor lung function and the ALJ offered no explanation as to why normal joint range of motion is inconsistent with this opinion. Plaintiff argues that there is ample evidence in the record that establishes that she had neck pain, low back pain, and hand/wrist pain.[51] And, plaintiff argues that the ALJ did not even mention that Markovich had relied on plaintiff's poor lung function in reaching her opinion. Plaintiff argues that the record shows that she continued to have problems with shortness of breath after her hospitalization for pneumonia in late 2017/early 2018,[52] and CT scans and x-rays confirmed that she had lung scarring.[53] As for the ALJ's reliance on Markovich's own examination findings, plaintiff argues that the ALJ relied on those that supported a finding of nondisability but ignored the findings that

---

[50]Plaintiff's Memorandum [etc.] at 12-13, Docket No. 14.

[51]Admin. Rec. at 1117 (August 22, 2018 CT scan showed degenerative changes of lower lumbar spine); 1153 (tramadol added to plaintiff's medication regime); 1157, 1158, 1160-61 (plaintiff's pain treated with oxycodone and fentanyl patches); 1160 (on exam, plaintiff had pain with palpation of the lumbar spine, trigger points of the paravertebral lumbar muscles, pain with palpation of both SI joints, pain over the hips, and positive straight leg test); 1752 (oxycodone prescribed for plaintiff's pain).

[52]Admin. Rec. at 405, 413-415, 1696.

[53]Admin. Rec. at 1118, 1265-1266, 1743.

-19-

supported a finding of disability. Plaintiff points out that Markovich noted that plaintiff was in apparent pain and upon physical exam, found paraspinal muscle tenderness and tenderness to palpation of the thoracolumbar spine.[54]

The ALJ's finding that Markovich's opinion was inconsistent with the objective medical evidence was supported by substantial evidence. The medical evidence of record shows that plaintiff only had some tenderness to palpation at times and had good range of motion and normal strength, all of which would suggest that she was not as limited as Markovich opined.

Plaintiff next argues that the ALJ failed to adequately explain how plaintiff's daily activities were inconsistent with Markovich's opinion. The activities that the ALJ relied on "includ[ed] being able to stand for a few hours at a time and performing basic household activities with breaks, such as cleaning, cooking, meal preparation, laundry, and vacuuming...."[55] Plaintiff argues that the medical evidence of record supports Markovich's opinion that plaintiff was limited to frequent standing and that the ALJ seemed to ignore Markovich's own statement that plaintiff could only do household activities if she took breaks. Plaintiff insists that the ALJ failed to explain how plaintiff's minimal daily activities were inconsistent with an ability to frequently sit, stand, and walk.

---

[54]Admin. Rec. at 1681.

[55]Admin. Rec. at 1296.

Plaintiff's daily activities might not have been substantial evidence supporting the ALJ's partial rejection of Markovich's opinion but Markovich's opinion was inconsistent with the objective medical evidence. Thus, the ALJ did not err in discounting Markovich's opinion.

Because the ALJ erred as to Dr. Gonzales' and Dr. Lace's social interaction opinions, the court must decide whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate.

"First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). Here, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Gonzales' and Dr. Lace's social interaction opinions.

"Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). At this step, the court must "determine whether the record has been

-21-

developed thoroughly and is free of conflicts, ambiguities, or gaps." <u>Leon v. Berryhill</u>, 880 F.3d 1041, 1046–47 (9th Cir. 2017). Here, there is evidence in the record as to the impact plaintiff's moderate social interaction impairment would have on plaintiff's ability to work. Dr. Lace opined that plaintiff's moderate social interaction impairment would mean that she would be "limited to occasional contact with ... coworkers, supervisors, and the general public."[56] The question then becomes whether there is any evidence in the record as to whether plaintiff would be able to perform her past relevant work if she were limited to occasional contact with coworkers, supervisors, and the general public.

At the first administrative hearing, the vocational expert was given a hypothetical person

> who is limited to light work with the ability to lift and carry up to 25 pounds. This person is limited to frequent climbing of ramps or stairs, balancing, stooping, kneeling, crouching and crawling, no climbing of ladders, ropes or scaffolds, this person is to avoid concentrated exposure to non-weather related extreme cold, non-weather related extreme heat, wetness, humidity, excessive vibration and is to avoid moderate exposure to excessive noise, irritants such as fumes, odors, dust, gases and poorly ventilated areas and hazardous machinery. Further this person is limited to the occasional interaction with the public, coworkers and supervisors.[57]

---

[56]Admin. Rec. at 50.

[57]Admin. Rec. at 65.

The vocational expert testified that such a person could not perform any of plaintiff's past relevant work.[58]  Similarly, at the second administrative hearing, the vocational expert was given a hypothetical person

> who is limited to light work with frequent climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, frequent balancing, stooping, kneeling, crouching or crawling.  This person is to avoid concentrated exposure to non-weather-related extreme cold or non-weather-related extreme heat, wetness, humidity and excessive vibration.  This person is to avoid moderate exposure to excessive noise which I define as 90 decibels and above.....  [And this person should] avoid[] moderate exposure to respiratory irritants and hazardous machinery.  This person is limited to occasional interaction with the public and coworkers.[59]

The vocational expert testified that such a person could not do any of plaintiff's past relevant work.[60]

Because the vocational experts testified that plaintiff would not be able to perform her past relevant work if her limitations included being limited to occasional interaction with the public and coworkers, it would seem that no further development of the record is required.  However, that is not the case because the foregoing hypotheticals contained environmental limitations which were not included in plaintiff's RFC as assessed by the ALJ.  The vocational experts testified that plaintiff would not be able to perform her past relevant work

---

[58]Admin. Rec. at 66.

[59]Admin. Rec. at 1332-1333.

[60]Admin. Rec. at 1333.

-23-

if she were limited to occasional interaction with the public and coworkers <u>and</u> had <u>all</u> of the other limitations in the hypotheticals. But, plaintiff does not have all of the other limitations in the hypotheticals. In particular, plaintiff was found to not have environmental limitations, a finding that plaintiff has not challenged.[61] What is missing from the record here is evidence as to whether a person with the limitations that the ALJ assessed, with the added limitation of occasional interaction with the public and coworkers, would be able to perform plaintiff's past relevant work. Thus, further proceedings are required to fill this gap.

Conclusion

The final decision of defendant is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 26th day of April, 2023.

/s/ H. Russel Holland<br>United States District Judge

---

[61]Having not raised such a challenge in her briefing, any such challenge would now be considered waived. <u>Valdez v. Saul</u>, Case No. 1:19-cv-0121-JLT, at 2020 WL 1853015, *6 (E.D. Cal. April 13, 2020) (citing <u>Bray</u>, 554 F.3d at 1226 n.7).

-24-